FILED
LODGED
RECEIVED

MAIL

JAN 02 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

1

Michael Smith
2  521 S. Yantic Ave
    Bremerton, Washington 98312
3

4                    UNITED STATES DISTRICT COURT

5              WESTERN DISTRICT OF WASHINGTON AT SEATTLE

6  VENICE PI, LLC,                          Civil Action No.: 17-cv-1211TSZ

7       Plaintiff,

8            v.                             DEFENDANT SMITH'S RESPONSE TO THE
                                            PLAINTIFF'S MOTION TO DISMISS
9  JESSE COOPER;                            COUNTERCLAIMS AND STRIKE
    WILLIAM ARTH MCMILLIAN JR.;             AFFIRMATIVE DEFENSES
10  DANIEL BAUSTISTA;
    jOSEPH oTTOSEN;
11  ESTEBAN OROZPE;
    EDWARD JILES;
12  MICHAEL SMITH;
    BILLY JOE GAMBILL;
13  TSIMAFEI SHAPAVAL;
    FAIMAFILI MIKA;
14  ROBERT BOVITZ; and
    jonathan garcia,
15

16  Defendants.

17

18  Defendant Michael Smith ("Defendant") hereby submits this Answer to the Plaintiff's Venice PI, LLC Motion to

19  Dismiss Counterclaims and Motion to Strike Affirmative Defenses.

20  The Plaintiff has requested to dismiss the Defendant's counterclaims for a declaration of non-infringement and

21  abuse of process for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The defendant has in fact stated a Claim

22  under Fed. R. Civ. P. 12(b)(6) and request the court to dismiss the Plaintive motion to dismiss the Defendant's

23  counterclaims for a declaration of non-infringement and abuse of process.  The Plaintiff has also requested to

24  dismiss or strike all of the Defendant's defenses under FRCP 9(b) and/or FRCP 12(f).  The defendant has in fact

25  stated a Claim under Fed. R. Civ. P. 12(b)(6) and request the court to dismiss the Plaintive motion to dismiss or

26  strike all of the Defendant's defenses under FRCP 9(b) and/or FRCP 12(f).

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES – 1

## BACKGROUND

The Plaintiff filed a complaint against a number of people including the defendant under Case 2:17-cv-01211-TSZ. The Case has a filing date of November 7, 2017. The defendant mailed in an answer with affirmative defenses and counterclaims with the court and mailed copies to the Plaintiff on November 27, 2017. The Filing Date for the answer was recorded as November 30, 2017. The Defendant received the courts Minute notice on November 28, 2017 with a filing date of 3 November 2017. The defendant received the Plaintiff's response to the courts minute order on or about December 14, 2017, the filling date is unknown to the Defendant. The Defendant received the Plaintiffs motion to dismiss Counterclaims and Strike Affirmative Defenses on December 22, 2017, filing date is unknown to the defendant.

## RESPONSE TO ARGUMENT

In response to A. Standard for a motion to dismiss, the Plaintiff state that under Rule 12(b)(6) a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. And that in determining whether to grant a Rule 12(b)(6) motion, the court must accept as true all "well-pleaded factual allegations" in the complaint per Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). It is the Defendants position that the defendant has in fact stated a claim upon which relief can be granted and Defendants position that the Plaintiff has not submitted "factual allegations" in the complaint.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 2

1   In the Plaintiff's Complaint the Plaintiff makes claims with no factual basis to build a narrative

2   to support the plaintiff's view, such as: In section I of the Plaintiffs complaint. The Plaintiff is

3   declaring a series of accusations in sequence without any well- plead factual basis for the

4   allegations.  The Plaintiff identifies the defendants 5 times, the term copied 4 times, distributes 6

5   times, and infringement 2 times,  in the section while building their narrative using it as a

6   declaration.

7

8

9   During Section I the Plaintiff further a for-profit exploitation of works, yet the Plaintiff provided

10  no material evidence of a financial transaction of any kind involving the defendants.  There

11  Plaintiff has made a plea to the court at this point, but it is not well pleaded.  It is the position of

12  the defendant that everything stated by the Plaintiff in Section I of the Complaint is Speculative.

13

14

15  In Section II of the Plaintiff's Complaint addresses Jurisdiction and Venue yet portions of the

16  plaintiffs statement make allegations: such as:  In Section II paragraph 4 the Plaintiff states that

17  the true identity of each Defendant was unknown to Plaintiff originally, on information and

18  belief each Defendant may be found in the District and/or a substantial part of the acts of

19  infringement complained of herein occurred in the District.  On information and belief, personal

20  Jurisdiction in this District is proper because each Defendant without consent or permission of

21  the Plaintiff as exclusive rights owners distributed and offered to distribute over the Internet

22  copyrighted works for which Plaintiff has exclusive rights.

23

24

25

26

It is the Defendants position that the Plaintiff has identified individuals with Internet service

accounts with by use of an ISP number provided by the service provider.  The Defendant

therefor states that the Plaintiff has not proven that they have in fact identified the any person

who has allegedly infringed.  Subscription to a service does not make the defendant the sole user

of said service.  Due to this the Defendant beliefs the Plaintiff allegations while establishing

Venue (section II, 4) to be speculative, not factual nor well plead.


In Section III of the Plaintiff's Complaint addresses Parties.  In Subsection A, Plaintiff and its

copyright in paragraph 8, the Plaintiff claims the motion picture was pirated and trafficked in the

bittorent network and is being illegally downloaded and distrusted countless times worldwide

with many confirmed instances of infringing activity traced to this jurisdiction.  The Plaintiff has

again made a plea, but has provided no data or action to back up the Plaintiff claim.  The

Plaintiff has not identified the defendant nor any other party as the person pirating the work.  The

Plaintiff has not identified the defendant nor any other party as the person providing it to a

bittorent network.


The Plaintiff has not identified any actions taken by the Plaintiff to issue a takedown notice or

other measures of relief to the BitTorrent network.  The Plaintiff has not identified these

confirmed instances of infringing nor provided dates, times, and persons involved.  As such the

Plaintiff was not identified the defendant nor any other party as a person involved in the alleged

confirmed instances of infringing activity.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES - 4

In Section III, Subsection A, Plaintiff and its copyright in paragraph 9  The Plaintiff claims the Defendants have notice through general publication and advertising as identified in the content of the motion picture, advertising of the motion picture and all packaging and copies , each of which bore a proper copyright notice.

The Defendant finds the Plaintiffs claims lacking in merit and contradictory in nature.  The Plaintiff has not provided any proof of general publication or advertising along any analysis of the effectiveness of such advertising.  Therefore it is not well plead there is even a reasonable chance that the defendant or and over defendant saw any such advertisement.

At the time of the alleged infringement of the Plaintiffs work, the work was in theatrical release, therefore how could any person have seen packaging on a copy baring a copyright notice when no copies are for sale. The Defendant finds the Plaintiff's statement as Speculative and not well plead.

In Section III, Subsection B, Defendants, in paragraph 10 The Plaintiff states that "The true names of Defendants were unknown to Plaintiff, rather each Plaintiff was known to plaintiff only by the IP address assigned by the ISP and the date and time at which the infringing activity of each defendant was observed by Plaintiff's investigator Maverickeye." And "It is likely that for all relevant times each Defendant was the sole party responsible for and in control of IP address".

The speculative nature of the Plaintiff's claims could not be clearer.  Without knowing who the alleged defendants are, and with the admitted Plaintiffs knowledge that an IP address from an account only indicates who pays for the service not who used it.  The Plaintiff has submitted to the court that the owner of the account is the user of the account  despite admitting that other household member has access.  The assertion that a specific individual is known or likely to have committed any act is not possible for the plaintiff to know, it is also not probable.  Today as in the past internet access is not something that is individualized.

Service is provided to customers through a service provider provided modem with a built in router or with an external router.  Either way, the ISP address is assigned to the MODEM.  The Modem is connected to the router internally/or with an external cable and computing devices are connected to the router.  Connection to the router can be made by physical connection or by wireless connection.  Connections may be made by computers, videogame systems, phones, watches, DVD players, TV's and other internet equipped devices.

The IP address assigned to modem is for the modem.  Any internet traffic generated by any internet equipped device on the network will occur through the same IP address.  The IP address does not and cannot identify a specific person nor and end user device. The Modems and routers provided by the ISP are typically capable of servicing up to 250 connected devices wirelessly at the same time in addition to up to four wired connections using a single IP address.  Furthermore the ISP's equipment includes multiple networks to allow additional wifi access to its customers.

By Utilizing a secondary quest network customers can provide temporary internet access to visiting quest on this secondary network using the same IP address.  A third network is also present creating a wifi hotspot accessible to any customer of the ISP with a wireless device within range of any of the ISP's routers.  The Internet Subscriber has no access to allow or deny access to this wireless network also known as a HOTSPOT.

Devices using the app detecting any of its wifi signals within range will automatically connect and use the IP address of the equipment they are connecting to at that time, without the account holder of the specific IP address granting specific access.  So if customer 1 visits a friend and customer 1 brought a phone, laptop or any other wifi device, the devices will pick up the ISP's hotspot network(s) as customer 1 travels and switch from one IP address to another as customer 1 moves out of range of 1 device and into range of another of ISP's devices.

The friend of Customer 1 may not even know his friend has the same ISP, yet the device may connect and all traffic will be routed through customer 1's hotspot.  However, If a neighbors signal is within range and stronger and closer, even if that HotSpot is next door  or across the street to the friend you are visiting, the friends device will connect to that other Customer (customer 5). The IP address associated with the use of the internet for the friend is now for Customer 5, because all traffic through a given modem has the same IP address.

It is there for the Position of the Defendant that the Plaintiff has not established a plausible narrative that is well-pleaded or factual.  Under Rule 12(b)(6) the court would apply this standard to the Plaintiff as well as the Defendant, by the Defendant submitting a counterclaim the Defendant is challenging the validity of the Plaintiff's claim as such.  The Plaintiff has referenced Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) states Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, *Twombly*, 550 U. S., at 555, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570.

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The Defendant counter claim has challenged the Plaintiff's claim as the claims submitted are wholly insufficient and not factual therefore they are not accepted as true.  Additionally the Plaintiff has not stated a claim to relief that is plausible on its face.  The IP address for each piece of equipment questionably identified by the Plaintiff is for a Modem rather than a computer as the Plaintiff stated.  As stated above, the Plaintiff has not and cannot identify any specific computer of other internet device as an infringing device.  As stated above the Plaintiff has not and cannot identify any specific person as the user of any specific computer or other internet device at the time of the alleged infringement.  As Such each of the Plaintiff's Prayers for relief VIII A through F are not plausible on its face by any reasonable standard.

The Defendant states that his counter claims do meet this standard as the information is detailed, factual and well pleaded.   The Defendant also states that is counter claims do request specific relief with sufficient facts under cognizable legal theory.   The Plaintiff has sited conservation force v. Salazar. 646 f.3d 1240, 1242 (9th Cir. 2011), due to the fact that in the referenced case the Defendants claims were dismissed under Rule 12(b)(6), however this situation was quite different.   As the mater brought before the court was filed will challenging the jurisdiction of the United States Fish and Wildlife Service.   That claim was denied removing the basis of the remaining claims.

The Defendant in this case has not challenged the Jurisdiction of the Plaintiff's case.  It is the Defendants position that the Defendants counterclaims factual allegations are more than enough to raise a right to relief above the speculative level.   The Defendants counterclaims and factual allegations expose the Plaintiffs Allegations as not factual and not above the speculative level as Rule 12(b)(6) states that the Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that ALL of the Plaintiff's complaint's allegations are true.

Bell Atl. corp. v. Twombly 550 U.S. 554, 555 (2007), States a §1 claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made, an allegation of parallel conduct, and a bare assertion of conspiracy will not suffice.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 9

1   There has been no offer of proof that the Defendants knew each other, or entered into any form

2   of agreement.  There is sufficient evidence that the Plaintiff's agents know each over and have

3   agreements in place as evidenced by the Plaintiff's admission in the Plaintiffs Claim.  A parallel

4   conduct allegation gets the §1 complaint close to stating a claim, but without further factual

5   enhancement it stops short of the line between possibility and plausibility.

6

7

8   The Parallel conduct is evidenced by the Plaintiff filling claims in Case 2:17-CV-01211-TSZ

9   against at least a dozen defendants including this defendant, after filing cases C-17-988 TSZ,

10  C17-990-TSZ, C-17-991 TSZ, C17-1074-TSZ, C17-1075 TSZ, C17-1076-TSZ, C-17-1163 TSZ,

11  C17-1164-TSZ and then subsequently filing cases C17-1219-TSZ, and C17-1403.  In each of the

12  cases the Plaintiff's filed paperwork with the court to obtain the identities of the account holders

13  of the IP addresses from an Internet service provider.  In each case it is known to the defendant

14  that an IP address does not indicate a user as the Plaintiff was told in varies cases such as C13-

15  0507RSL

16

17

18  C13-0507RSL filed in 2013 The court noted in the granting of Plaintiff motion to initiate early

19  discovery that "Identifying the account holder tells us very little about who actually downloaded

20  a file using that IP address. As one court noted, "it is no more likely that the subscriber to an IP

21  address carried out a particular computer function…than to say an individual who pays the

22  telephone bile made a specific telephone call." In re BitTorrent Adult Film Copyright

23  Infringement Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1. 2012).  In fact it is less likely.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES - 10

Home wireless networks are ubiquitous, meaning that a single IP address can simultaneously support multiple computer devices throughout the home and, if not secured, additional devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.  Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y 2012).  It is not clear that the Plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual contentions regarding an internet subscriber's infringing activities based solely on the fact that he or she pays the internet bill.

Although a Plaintiff's complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate.

In an Order Granting as motion to Dismiss date January 17, 2014, Judge Robert S. Lasnik United States District Court Western Court of Washington at Seattle Granted the Defendants motion to dismiss stating "For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 60)is GRANTED.  Given the procedural posture of this case, it is doubtful that plaintiff has facts to support the allegations of personal involvement and/or intent on which its claims rely."

In Case 3:13-CV-00395-AC Judge Ann Aiken of U.S. District Court of Oregon dismissed the file-sharing case against 615 defendants, ruling they were improperly lumped together in copyright infringement lawsuits filed on behalf of Voltage Pictures in Los Angeles.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 11

The strategy is to identify as many consumers as possible who may have downloaded a movie and threaten to sue if they don't pay. Indeed, some Oregon defendants say they considered settling -- even those who'd never heard of the movie -- for fear of incurring escalating legal costs and penalties.  The effort also was cost-effective for the Plaintiffs. In an earlier order, Aiken noted that Plaintiff avoided paying $215,250 in court filing fees by joining so many defendants. Instead, he paid $1,400.

"Accordingly, Plaintiff's tactic in these BitTorrent cases appears to not seek to litigate against all the Doe defendants, but to utilize the court's subpoena powers to drastically reduce litigation costs and obtain, in effect, $7,500 for its product," she wrote, adding "which in that case, can be obtained for $9.99 on Amazon for the Blu-Ray/DVD combo or $3.99 for a digital rental".

"The underlying message here is that Oregon's judiciary is not going to be duped," said Kelly Rupp, a Wilsonville lawyer representing Emily Orlando, who was named in the suit. "They have educated themselves, taking a stance on using the legal process to advance nefarious objectives." Other Voltage Pictures' defendants included a broke college student distraught about her ability to defend herself, a homeless man who doesn't own a computer and senior citizens without so much as an email address.  Nationwide, close to 250,000 "Does" have been named in what are called copyright troll cases, according to Julie Samuels of the Electronic Frontier Foundation, a San Francisco-based group that lobbies and litigates for digital free-speech and consumer issues.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 12

Typically, Voltage attempts to exploit the court's subpoena power coupled with the infringer's embarrassment of being a named defendant in a lawsuit associated with pornography to unfairly leverage "settlements" from Internet subscribers who may or may not unlawfully downloaded and/or accessed the pornographic films at issue. Unfortunately, the threat of pending litigation can be burdensome and costly, and innocent defendants tend to choose the "settlement" path instead of battling out their case in court. These defendants would rather not incur the ghastly time and expense of copyright litigation or face the potential embarrassment of fighting the case through various levels of the court system to hope to reach a fair judgment. Instead, they "settle" for a few thousand dollars to make the case go away and spare their name.

Similar to the trend in other "copyright troll" litigation, Voltage will attempt to blindly shame the billing contact for each ISP address, relying on the fact of ensuing public humiliation with being tied to a settlement. This shakedown tactic is unnecessarily predatory and usually results in the sometimes unfairly targeted and often innocent defendants in cooperating against their will or better judgment.

Federal judges often write how these "copyright trolls" bring the threat of suit but never fully intend to litigate the claims they raise. Instead these "trolls" offer an outrageous "settlement" that deters defendants from engaging in litigation to take the cheaper and quicker approach.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES – 13

1   The Court has already called into question the validity of the Plaintiff's claims by issuing a

2   Minute order in this case 2:17-CV-01211-TSZ t as well as cases C-17-988 TSZ, C17-990-TSZ,

3   C-17-991 TSZ, C17-1074-TSZ, C-17-1075 TSZ, C17-1076-TSZ, C-17-1163 TSZ, C17-1164-

4   TSZ, C17-1219-TSZ, and C17-1403 for all of the Defendants.

5

6

7   In two cases Nos. C17-990-TSZ, C-17-1075 TSZ the Plaintiff sued the same deceased Defendant,

8   Mr. Wilbur Miller.  It is well established in the minute order that the Defendant Mr. Miller was

9   both mentally and physically incapable of operating a computer for about five years prior to his

10  death.  It is also clearly stated that the identification of Mr. Wilbur's IP address by the Plaintiff

11  has raised significant doubts about the accuracy of IP- address tracking methods.

12

13

14  The minute order  also establishes that the Plaintiff may not solely Defendant identification

15  based on IP address, launch a fishing expedition aimed at coercing individuals into either

16  admitting to copyright infringement, or pointing the finger at family members, friends, tenants,

17  or neighbors.

18

19

20  The Plaintiff was instructed to demonstrate the plausibility of its claims before discovery will be

21  permitted.  Additionally the Plaintiff admitted to not abiding by the restrictions on discovery in

22  C15-1430 TSZ, the Plaintiff has been directed  not to communicate with any unrepresented

23  defendant in any many for any purpose until further order form the court.

24

25

26

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES – 14

The minute order also requires the Plaintiff to provide proof in each case, including this one, that supported by a declaration from an expert in the field, with qualifications to address IP address Spooking or faking, and the likelihood that each defendant' IP address was a false positive.  Also prove that the defendant is a playable and actionable segment of the copyrighted work, and evidence that each defendant engaged in the action.

As the minute order has raised many of the same issues risen by the Defendant's counterclaim, the Defendant beliefs that the Defendants counterclaim is well plead, factual, credible, and taken as true.

In regards to Telesaurus VPC, LLC, 623 F. 3d 998, 1003 (8th Cir. 2010). It is the position of the Defendant that the Defendants counterclaim has submitted sufficiently plausible claims which are accepted as true that is well pleaded.  These counterclaims expose the Plaintiffs claims as not factual, not well plead, not reasonable, not plausible, speculative, and without legal conclusion.

The Defendant has provided factual, well plead, reasonable, plausible, and credible claims backed by court cases to show the Plaintiff's defect in the complaint by identifying the IP address subscriber(s) as an infringer(s) an therefore as a defendant(s) to mount a claim.  As the Plaintiff's entire case is initially contingent on the proper identification of each Defendant.

As stated in the Defendants answer.  All possible affirmative defenses and counterclaims may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry upon the filing of the Defendants Answer, and therefore the Defendant reserved the right to amend its answer to allege additional affirmative defenses and/or counterclaims, if subsequent investigation so warrants.

In each of the Plaintiff's claims no evidence was provided to the court, the plaintiff relies on the court to assume the information is factual by claiming the information is true and cannot be faked while providing no evidence to support such claims.

The Defendant has challenged the claims presented to the court by the Plaintiff by addressing the non-factual nature of the information submitted to the court by the plaintiff.

In the Defendants first counter claim, the defendant identifies the Plaintiff as complicit in the infringement of the plaintiffs own copyright as evidenced by the plaintiff's own actions as submitted to the court.

The Plaintiff admitted to participating in copyright infringement activity by downloading and uploading the material the Plaintiff has accused the defendant of infringing.  The Material in not recognizable as the Plaintiff's copyrighted work.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES – 16

In response to Section B of the Plainttiff's Agument.  The Purpose of the Defendants Claim is not Redundant as stated by the Plaintiff.  The Defendant's first Counter claims states very clearly that the Defendant has not infringed upon the Plaintiff's work and seeks a formal declaration of the same form the court.  While Dismissing the Plaintiff's entire case will result in no derogatory judgment for the Defendant.  Even an accusation of wrong doing, can affect a person's credit, security clearance, and job prospects.

Dismissing the case is not the same as a formal declaration of non-infringement as could only be granted by judgment in the Defendants favor in a counter claim.  The Defendant reject the Plaints claims to strike the Defendants counter claim for any reason.

The Defendants Second counterclaim states very clearly that the Defendant believes the Plaintiff intends to elicit settlement funds and/or default judgments from defendants, rather than to explicitly prevent infringement of its copyrights.  Moreover, plaintiff has developed and engaged a litigation centric business model, whereby Plaintiff tracks BitTorrent sites in order to locate IP addresses, which may lead to a potential copyright infringer, in order to generate income off of the alleged downloads rather than use this as a part of their methodology to stop infringements.  This is evidence by the sheer number of claims submitted by the Plaintif listing huindreds of Defendants in each venue without a single tack down notice issued, website sued, or BitTorrent Company pursued.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 17

The Useful purpose of the Counter claim serves both the Defendants and the People at large.
Should the court find judgment for the Defendant, not only will the Defendant be cleared of such
claims, but the Plaintiff's actions will be exposed in the ruling and critiqued as to minimize the
chance of a Other Plaintiff's using such tactics this the court in the future.  The Counter claims
do not need to challenge the validity of the Copyright.  They challenge the actions, motives,
credibility and plausibility of the Plaintiff's case in accordance with the law.

This belief is backed by the numerous cases cited in this motion to dismiss answer, to include
knowingly filing cases against Internet subscribers, knowing that internet activity can be
generated by others legal and lawfully.  Making false statements of obligations such as: Section
III B 12 of the initial Plaintiff complaint that claims that EITHER the primary the primary
subscriber or someone who resides with the subscriber committed infringement.  The Plaintiff
clearly states they do not know who has committed the act, but has named the IP address account
holder as a defendant.  To be clear there is absolutely no legal responsibility for a Internet
account holder to monitor, the access of internet use, nor can the Defendants restrict the ISP
equipment from providing access on its HOTSPOTS.

The Plaintiff has stated in Section C of the argument that it believes the defendants counterclaim
for abuse of power is wholly false and refers to the Defendant as making wild Accusations.
However the Defendant believes that his statements are in fact reasonable, credible, well plead,
factual, and supported the multiple cases sited in this answer, as well as the minute order issued
in this case.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES – 18

The Plaintiff detailed a process of filing claims and a motive of stopping piracy.  The Defendant states the Plaintiff has actually taken no actions to take down the Plaintiff's work with the various legal methods afforded to them by stopping the transmission of the work with BitTorent, or other sites it claims to monitor.

By not stopping the sites from offering the material that they freely admitted to monitoring, they are 1) Passively allowing infringement. 2)  Actively participating in the infringement by downloading the files for comparison. 3) Increasing the number of potential litigants by waiting. There is a financial incentive that is apparent and has been documented in US District Court of Oregon where over 600 file sharing cases where dismissed against the Plaintiff Voltage Pictures for combining large numbers of defendants as john does into a few court cases and avoiding $215,250 in filing fees and utilize the court's subpoena powers to drastically reduce litigation costs.

The Plaintiff was forced to drop all the Defendants other than Doe 1, and files separately.  None of the Does were refiled.  When the Plaintiff files a case with 20 or more Defendants, the information is extremely broad, non-specific and vague as to encompass the group.

The Defendant upon evidence and belief states that the purpose of the Plaintiff's joining of multiple Defendants under a single case is to minimize the cost in filing lawsuits.

1  In Section D of the argument the Plaintiff is seeking to strike the Defendants affirmative

2  defenses as insufficient or immaterial.  It is the Defendants belief that the Affirmative defenses

3  not be stricken for the following reasons.  The Plaintiff received a copy of the Affirmative

4  defenses in the answer to its complaint as allowed in the filing to the answer.

5  The factual basis of the notice is evident in the reading of the Answer to the Plaintiffs claim, and

6  
7  motive is satisfied by providing a copy to the Plaintiff prior to filing as the Defendant was under

8  a filing deadline to respond to avoid summary judgment.  The defendant believes that all of his

9  Affirmative defenses meet the requirement of plausibly, despite the Ruling of US District Court

10 Eastern District of California Case 1:13-CV-00770-AWI-SAB stating that the "Court need not

11 decide whether the heightened "plausibility" standard applies to affirmative defenses".  This case

12 also ruled that Fair notice was given in the filing of affirmative defenses.

13 
14 
15 The Defendant states that he rejects the claim maid by the plaintiff that the Defendant's

16 affirmative defenses are insufficiently pleaded under FRCP 8( c), 9(b) or legally invalid.

17 
18 
19 In Section D1 the Plaintiff Challenges the Comparative Negligence Defense.  As Established in

20 Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Defendant has shown through

21 the Plaintiffs own Actions, that by participating in the "Swarm", and failing to issue take down

22 
23 notices the Plaintiff is negligent.  This is detailed in the Defendants answer to the complaint, as

24 well as this answer to the motion to Dismiss.

25 
26 

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES - 20

In Section D2 the Plaintiff Challenges the Failure to Mitigate damages Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Defendant has shown through the Plaintiffs own Actions, that by participating in the "Swarm", and failing to issue take down notices the Plaintiff is failed to Mitigate any damages.  The Plaintiff has stated that they monitor sites looking for their copyrighted works, and capture data through its participation in a BitTorrent program to download the item to track potential infringement.  The Plaintiff can issue a DCMA takedown notice at www.DMCA.com.

A DCMA takedown notice is when content is removed from a website at the request of the owner of the content or the owner of the copyright of the content. It is a well-established, accepted, internet standard followed by website owners and internet service providers.  This is also referenced in the Defendants answer to the complaint, as well as this answer to the motion to Dismiss.  The Plaintiff failed to exercise reasonable care and diligence to mitigate any alleged damages, (such as a takedown notice) and have further unreasonably delayed in the submission of their claims for any alleged losses.

In Section D3 the Plaintiff Challenges the Illegality Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Defendant has shown through the Plaintiffs own Actions, that by participating in the "Swarm", and failing to issue take down notices the Plaintiff is aware of illegal activity and has not only failed, it issue take down notices to stop it, but has actively participated in the practice.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 21

The Plaintiff has stated that they monitor sites looking for their copyrighted works, and capture data through its participation in a BitTorrent program to download the item to track potential infringement.  This is also referenced in the Defendants answer to the complaint, as well as this answer to the motion to Dismiss.  The Defendant does not arrive at this conclusion lightly; the Plaintiff's methods have detailed this process in detail in the initial complaint.

In Section D4 the Plaintiff Challenges the Unclean hands Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Defendant has shown through the Plaintiffs own Actions, that by participating in the "Swarm", and failing to issue take down notices the Plaintiff is a willing participant in illegal activity and has not only failed, it issue take down notices to stop it, but has actively participated in the practice.  The Plaintiff has stated that they monitor sites looking for their copyrighted works, and capture data through its participation in a BitTorrent program to download the item to track potential infringement.

This is also referenced in the Defendants answer to the complaint, as well as this answer to the motion to Dismiss.  The Plaintiff was provided specific facts as to its actions in the initial complaint, information that is assumed by the court to be true, that the Defendant is bringing to the attention of the court.  The Defendant does not arrive at this conclusion lightly; the Plaintiff's methods have detailed this process in detail in the initial complaint, providing a factual basis for the defense.

In Section D5 the Plaintiff Challenges the Misjoinder Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  In Section II and II of the Plaintiffs Complaint, the Plaintiff details the process creating logs of transaction by monitoring sites looking for their copyrighted works, capturing data through its participation in a BitTorrent program making assumptions as to who the who was using the internet at the time of the alleged infraction, and who has access to the IP address.

Furthermore in Section VI of the complaint the Plaintiff make implausible claims that the actions are in the same series of transactions or occurrences.

In the Plaintiff's Exhibit B if the time stamps are to be believed they show transaction as much as 18 hours apart making them implausible that they are in the same series of events.  In fact none of the time stamps in Exhibit B are the same.  As such it is the Defendant position that they are a series of related events. And as such are improperly joined by the Plaintiff.

In Section D6 the Plaintiff Challenges the No infringement Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Defendant has stated in his answer a well pleaded, factual, credible and plausible account as to why there is sufficient cause for this defense.  The Defendants Answer to the complaint as well as additional details provided in this Answer to the motion to Dismiss Counterclaim and Affirmative defenses provide a detailed account that reduce if not eliminate the Credibility of the Plaintiff.

A summary of the account is as follows:

1) How the Tracking Activity requires participation in the Swarm by the Plaintiff.

2) How the Evidence provided in Exhibit B is devoid of meaning as it is based on a known failed method of packet tracking (Sha-1) that is has not been in wide spread use for over 10 years because it is easy to fake making it not possible to know that the hash value tracked is valid as it has been proven to not be unique.

3) Each IP address does not indicate a person but rather a device which is extremely likely to have multiple users making it impossible to say reasonably who used it.

4) The fact that Internet Service Providers allow all there users to use hotspots on the other subscribers IP addresses.

5) As identified in the minute man notice issued the Plaintiff has already filled two claims in different cases against a deceased individual incapable of operating a computer for years prior to his death, by filing paperwork claiming they has VERIFIED the identity of the defendant as an infringer  when in fact that is impossible.


In Section D7 the Plaintiff Challenges the Estoppel Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Plaintiff says the Defendant merely states a defense name (estoppel) but fails to provide any factual basis for such a defense.  The Defendant's Estoppel defense is based on the Plaintiffs misrepresentation of material fact.  The Defendant makes a affirmative Defense of Estoppel based of words, actions, omissions, and conduct of the Plaintiff.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES – 24

1  It is the Defendants belief that the Plaintiff is aware that the Tracking Activity requires

2  participation in the Swarm by the Plaintiff and that action is the same illegal action the Plaintiff

3  alleged the Defendants made.

4

5

6  It is the Defendants belief that the Plaintiff knows that Exhibit B is devoid of meaning as it is

7  based on a known failed method of packet tracking (Sha-1), that is has not been in wide spread

8  use for over 10 years, that itis easy to fake, and therefor know that the hash value tracked is

9

10  invalid as it has been proven to not be unique.

11

12  Each IP address does not indicate a person but rather a device provide by a Internet Service

13  Provider  And that Device can provide access to multiple users under the same IP address

14  making it impossible to say reasonably who used it.

15

16

17  The fact that Internet Service Providers allow all there users to use hotspots on the other

18  subscribers IP addresses. 5) Because the defendant voltage pictures has been told the IP address

19  is not proof of who infringed by multiple court jurisdictions including this one.

20

21

22  All of these statements and all statements as stated in the Answer to the Plaintiffs complaint as

23  well as the answer to the motion to dismiss in its entirety provide the Defendants factual

24  reasonable and plausible belief that estoppel is a valid defense for the Defendant.  This is

25  detailed at length in the Answer to the Plaintiffs complaint.

26

In Section D8 the Plaintiff Challenges the Ratification Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Plaintiff says the Defendant merely states a defense name (Ratification but fails to provide any factual basis for such a defense.  Ratification is a legal doctrine that arises in this case when an agent attempts to the principal despite lacking the authority to do so.  One of the Plaintiff's agents violated the law by participating in a swarm and uploading and download material they knew are believed to be copyrighted works.

To do so under the name of the Plaintiff does not mitigate the legality of the actions nor does it mitigate the association to the Plaintiff as it acted as an agent for the Plaintiff.  The Defendant believes there is sufficient evidence to support the Defense of ratification.

In Section D9 the Plaintiff Challenges the Barratry Defense.  As Established in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Plaintiff says the Defendant merely states a defense name (Ratification but fails to provide any factual basis for such a defense.  Barratry is an offense defines as creating legal business by stirring up disputes and quarrels, generally for the benefit of the lawyer who sees fees in the matter.  Barratry is illegal in all states.

It is the Defendants Belief that the Plaintiff has knowledge of the defects in the filing this case as has been pointed out to the Plaintiff (voltage LLC) in Multiple US district courts across the US.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 26

1  It is also the Defendants belief that the Plaintiffs agents are aware of these defects as they are

2  repeatedly the agents for the Plaintiff in multiple filings in multiple US district courts across the

3
4  country.  It is also the Defendants belief that the Plaintiff's counsel is aware of material defects

5  but has filled cases against hundreds of Defendants and continues to do so based on the same

6  flawed information.

7

8  In Section D10 the Plaintiff Challenges the De Minimis non curat lex Defense.  As Established

9  in Case 1:13-CV-00770-AWI-SAB, Notice is properly given.  The Plaintiff says the Defendant

10
11  merely states a defense name (Ratification but fails to provide any factual basis for such a

12  defense.  The Defense is based on the idea or legal doctrine by which a court refuses to consider

13  trifling matters.  The Movie Once upon a time in Venice can be purchased for $7.99, or rented

14  for $4.99.  The value of this case to court is minimal or trifling.  The defendant beliefs the

15  Affirmative Defense of De Minimis non curat lex is relevatant and should be granted.

16

17

18  The Defendant has stated in his answer to the Plaintiff's complaint a well pleaded, factual,

19  credible and plausible account as to why there is sufficient cause for the Defendants defense.

20  The Defendants Answer to the complaint as well as additional details provided in this Answer to

21
22  the motion to Dismiss Counterclaim and Affirmative defenses provide a detailed account that

23  reduce if not eliminate the Credibility of the Plaintiff in this matter.  The Plaintiff finds all other

24  matters in the motion to dismiss not creditable.  The Defendant request the Plaintiff's motion to

25  Dismiss be denied.

26

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSES - 27

1

2

3

4   Dated this 28 of December, 2017.

5

6

7                                         Michael Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES – 28**

Michael Smith
521 S. YANTIC Ave
Bremerton, WA. 98312

FILED
LODGED
RECEIVED

MAIL

JAN 02 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

US District Court
Western District of Washington
700 Stewart, Seattle, WA 98101



1000

98101



U.S. POSTAGE
PAID
BREMERTON, WA
98312
DEC 30 2017
AMOUNT
$2.03
R2304N117983-11