# ORIGINAL

_____ FILED
_____ LOGED
_____ RECEIVED

**MAIL**

FEB 14 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

Michael Smith
521 S. Yantic Ave
Bremerton, Washington 98312

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| VENICE PI, LLC, | Civil Action No.: 17-cv-1211TSZ |
| Plaintiff, | |
| v. | **DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES** |
| JESSE COOPER; WILLIAM ARTH MCMILLIAN JR.; DANIEL BAUSTISTA; jOSEPH oTTOSEN; ESTEBAN OROZPE; EDWARD JILES; MICHAEL SMITH; BILLY JOE GAMBILL; TSIMAFEI SHAPAVAL; FAIMAFILI MIKA; ROBERT BOVITZ; and JONATHAN GARCIA, | |
| Defendants. | |

Defendant Michael Smith ("Defendant") hereby submits this Answer to the Plaintiff's

Venice PI, LLC Reply in support of Motion to Dismiss Counterclaims and Motion to Strike

Affirmative Defenses.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 1

The Plaintiff has requested to dismiss the Defendant's counterclaims for a declaration of non-infringement and abuse of process for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and strike all defenses under FRCP 9(b) and/or FRCP 12(f). The Defendant respectfully replies in support of its counterclaims, defenses, and reply to motion to dismiss, and request to dismiss the Plaintiff's motion to dismiss as it does not meet the requirements for dismissal as stated under Fed. R. Civ. P. 12(b)(6) and strike all defenses under FRCP 9(b) and/or FRCP 12(f).

## **ARGUMENT**

The Defendant Michael Smith has stated a claim under Fed. R. Civ. P. 12(b)(6) and request the court to preserve the defendants defenses and counterclaims as allowed by Fed. R. Civ. P. 12(h)(3). The Defendant has stated a claim requesting:

a.      Dismissal of the Plaintiff's claims with prejudice;

b.      An order that the Plaintiff shall be afforded no relief from its complaint herein;

c.      A ruling prohibiting the testimony of any Maverickeye representative on the basis of lack of foundation, inequitable conduct, and Daubert principles;

d.      For any and all damages suffered by the defendant;

e.      For such other and further relief as the Court may deem just.

A dismissal of a Plaintiff's claim with prejudice not only dismisses the claim, but bars the Plaintiff from bringing an action on the same claim. An order to afford the Plaintiff no relief was prevent the Plaintiff from seeking payment for cost of litigation. The Defendant believes this is

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 2

1   necessary to request as the Plaintiffs filling indicate a desire to seek such cost, file the Plaintiff

2   holds steadfastly to innocents and the Plaintiffs knowledge that the claim is insufficient, and

3   meritless.  A ruling prohibiting Testimony of Maverickeye, would recognize rulings of other

4   courts that this agents of the Plaintiff is not an expert, the data provided to the court by such

5   agent does not provide value, and as stated in the second minute order, if believed, may have

6   
7   been gained illegally.  The request for unspecified damages by the Defendant is reasonable as

8   there is some cost in providing a defense which will generally rise over time.  This is of course

9   not an indication the court will grant such a prayer for relief, as that would be determined at a

10   different time, only the basis of Defendants prayer.  The Defendant request other and further

11   such relief as the Court may deem just because the Defendant does upon information and belief

12   think the Court, and the Defendant is unduly burdened with the Plaintiff's case.  As such it is the

13   
14   Defendants belief that should the Court rule in favor of the Defendant, the Court at its discretion

15   may choose to take actions such as but not limited to: Dismiss with prejudice and addressing the

16   limiting of the Plaintiff's joiner of defendants in such cases.

17   
18       The Plaintiff motion to dismiss nor their reply does not address the deficiencies in the

19   Plaintiffs complaints, provides no evidence to support their request for the court to dismiss the

20   Defendant's counterclaims for a declaration of non-infringement and abuse of process.  The

21   Plaintiff has requested to dismiss or strike all of the Defendant's defenses under FRCP 9(b)

22   and/or FRCP 12(f).  The defendant has in fact stated a Claim under Fed. R. Civ. P. 12(b)(6) and

23   request the court to dismiss the Plaintive motion to dismiss or strike all of the Defendant's

24   
25   defenses under FRCP 9(b) and/or FRCP 12(f).  It is the Defendants position that the

26   requirements of Rule 12(f) have not been and cannot be satisfied by the Plaintiff.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 3

Rule 12(f) provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See, .e.g., Haley Paint Co. v. E.I. Du Pont de Nemours & Co., 279 F.R.D. 331, 335 (D. Md. 2012). In determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." Id. at 336.

"Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks omitted); see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, 227 Fed. App'x 239, 247 (4th Cir. 2007).

Therefore, "when reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader.' Piontek v.Serv. Ctrs.Corp., PJM 10-1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted). Rule 12(f) motions ordinarily "will be denied unless the matter under challenge has no possible relation to the controversy and may prejudice the other party.' U.S. ex rel. Ackley v. International Business Machines Corp., 110 F. Supp. 2d 395, 406 (D. Md. 2000) (quoting Steuart Inv. Co. v. Bauer Dredging Constr. Co.,323 F. Supp. 907, 909 (D. Md. 1971)); accord Williams v. Kettler Mgmt. Inc., CCB-12-1226, 2014 WL 509474 (D. Md. Feb. 5, 2014); E.E.O.C. v. Spoa, LLC, CCB-13-1615, 2014 WL 47337 (D. Md. Jan. 3, 2014).

It is the Defendants belief that the defenses and counterclaims presented by the defendant directly related to the controversy, relevant, and material. The Defendants defenses and counterclaims challenge the Plaintiffs complaint, investigation, lack of credible experts,

1   unrecognizable data provided as evidence, and inability to properly identify the alleged infringer

2   as the actual defendant.  A motion to strike a defense "should not be granted when the

3   sufficiency of the defense depends upon disputed issues of fact or unclear questions of law."

4   NCUA v. First Union Capital Mtks. Corp., 189 F.R.D. 158, 163 (D. Md. 1999); see Federal Ins.

5   Co. v. Edenbaum, JKS-12-410, 2012 WL 2803739, at *2 (D. Md. July 9, 2012).  Logically, this

6

7   rationale also applies to allegations in a complaint. In other words, the relevance of allegations

8   may turn on disputed issues of fact or law, so as to render it premature to strike them.  See Dana

9   D. Blevins v. Jacob A. Piatt CA ELH-15-1551 3,4.

10

11           The Defendant has answered the Plaintiff's complaint and motion to dismiss by

12   addressing each of the allegations claimed by the Plaintiff.  To be clear the Defendant defense

13   disputes the Plaintiff's claims, making the Plaintiff's defense of the motion to dismiss

14   insufficient, as the claim depends upon disputed issues of fact and or unclear questions of law.

15   The Defendant addresses various conclusionary statements, inaccuracies and falsehoods made by

16   the Plaintiff with sufficient factual matters, which call into question the Plaintiff's claim to be

17   accepted as true.  While the Defendant does question the motives of the Plaintiff it is done

18   respectfully in accordance with LRC 1(d) Prohibition of Bias, and with reason considering the

19   history of the Plaintiff as documented in judgments from multiple US courts.  In doing so the

20   Defendant has provided evidence to the court that the complaint as plead by the Plaintiff is not

21   well plead, and is not filed in good faith.

22

23           The Plaintiff states the Defendant's entire response consist of a restatement of

24   generalized defenses … along with an attack… seemingly almost a motion to dismiss.  The

25

26   Defense challenges the validity of the Plaintiff's data as evidence, the legality of the Plaintiff's

Agents, the motives of the various agents, the validity of the method of data detection, and offer material and pertinent reasons as to the matter(s) under challenge in the previous fillings including reference to legal documents issued by various courts including multiple United States District Courts.  As to the Plaintiff's reference to the Defense… filling a motion to dismiss.  As the Defendant is defending himself, the defendant is and was not aware of how to address such a motion, however if the Court can and would hear such a request at this time, I the Defendant would formally agree to file with the Plaintiff for a motion to dismiss all actions on both sides in the interest of a speedy resolution.

The Plaintiff describes the Defendants response to the court as over "length opposition" and "lengthy criticisms" and suggests the defendant must provide an "offer of proof" and that the Defendants pleading "be given no weight".  While the Plaintiff language is not particularly offensive, it is not completely free of bias in accordance with LCR 1(d).  In all three fillings the Defendant has painted a picture of the Defendant using terms such as conspiring, intentional, and participant.  The Plaintiff makes declarative statements with terms such as "each defendant supported and advanced … profiting from piracy", "Defendant knowingly and actively participated in a conspiracy" and " Defendant …. has used and continues to use a media distribution system".  Not one of these statements can stand on its own.  The Plaintiff speaks to the "intentions" of a person(s) the Plaintiff has never met, and the actions are impossible to prove.  So while I again reiterate the Plaintiff's case is not well plead, by continuing to use such speech, the Plaintiff displays a bias as there is no basis in fact as to the identity of and the actions of the Defendant(s).  Claiming an action occurred does not mean it did.  The plausibility of the dozens of actions stated by the Plaintiff diminishes with each claim as it is an assumption.  Under

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 6

Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, *Twombly*, 550 U. S., at 555, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.

The Defendant submits that the Plaintiff's initial complaint, motion to dismiss, as well as the reply in support of motion to dismiss counterclaims and strike affirmative defenses was not short, nor was it a plain statement. The Plaintiff filled a rather long complaint with assumptions about possible use of computers, programs, security of networks, the assignment of service, the user of said service, the intentions of the defendant the reasons for the alleged actions, social media presence, and the explicit impossibility of false information. The Plaintiff also made multiple declarations of intention, identification, and motivation that strain the possibility of truthfulness. As stated in the first minute man ruling from this court, the Plaintiff identified the same deceased individual in (2) separate fillings as a defendant. In each the Plaintiff stated the impossibility of any other person having committed the alleged action. The Plaintiff stated their agents used software to observe him; social media to verify identify, and connected to his computer to verify actions in the initial fillings. The Plaintiff accused a person who was deceased of collusion, conspiracy, and of course Infringement of copyrighted material. As that defendant is deceased, none of that was true. The Plaintiff seeks to use the same methodology that was identified by this court in the minuteman order, against this Defendant with knowledge of the flawed nature of doing so.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 7

As such to properly address the Plaintiff's complaint and additional fillings it is only proper that the defense provide a lengthy response to adequately address each of the Plaintiff's claims as per *Twombly,* 550 U. S., at 555, "the Rule does call for sufficient factual matter" as this apply equally to the Defendant and the Plaintiff.  As the Facts of the case has been disputed by the Defendant in the Answer as well as the Counterclaims, Affirmative Defenses, and Answer to Motion to Dismiss Counterclaims and Affirmative defenses, granting the Plaintiff's motion to dismiss the should not be granted as the sufficiency of the defense depends upon disputed issues related to the controversy.

Furthermore it denies the Defendant the ability to clarify inaccurate and false information as presented by the Plaintiff that would prejudice the court.  As Both the Plaintiff and the Defendant must provide sufficient factual matter.  As such the Defendant has spent countless hours reviewing court rules, cases, and ruling.  The Plaintiff suggest that the defendant is citing Generalizations, yet the Defendant provides details, references and will expand upon any area the Plaintiff does not understand.

The Plaintiff states the immaterial information such as: copyright notice is provided not only on a dvd/blu-ray packing, but on the motion picture.  As the defendant has never seen this motion picture in my life, the Defendant cannot say that, whether the notice existed, only that the Defendant has never seen it.  For the Plaintiff to state that the Defendant was provided notice is blatantly false as the Defendant has never seen the motion picture or its packaging.

The Plaintiff cites "parallel conduct" to defend its filling of claims against multiple cases as the Defendant has challenged the motion to dismiss counterclaims.  The Plaintiff's parallel conduct is infact evidence that the Plaintiff is using generalized, non-specific information to

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - **8**

joining the cases with no reasonable connection.  It is the Defendants belief that the narrative of the Plaintiff, based on generalizations does not and cannot hold up against individuals, and the Defendants have a right to present that fact.

The Plaintiff cites early dismissal cases referred to as being based on different pleadings. The Defendant firmly disagrees.  (2:11-cv-03995-DRH-GRB) filed by the Plaintiff Voltage Pictures.  The case was ruled on by Judge Gary R. Brown, United states Magistrate ruled in 5/1/2012, the Motion to Quash was granted.  Judge John E. Simko, United states Magistrate ruled in Voltage Pictures, LLC v. Does 1-5,000 (4:10-mc-00075), Motion to Quash granted 9/22/10.

The Plaintiff cites BitTorrent Advocacy groups and Adult-titles cases as a reason that an element of "shame" is not present in non-adult titles of copyright infringement.  The Defendant states that being accused, linked to, and tied to Piracy has an immense element of shame.

The Plaintiff believes naming a man who was deceased for months prior to the alleged crime in a suit are irrelevant and a nonissue.  The Defendant is stunned by the Plaintiff's lack of recognition that, with the exemption that this defendant is alive, the Plaintiff's claims for the case are identical, and were false.

The Plaintiff states that the responsible party is the subscriber.  The Defendant does not find this reasonable, plausible or proven my any investigation by the Plaintiff.  This is certainly not well plead, as the Plaintiff cannot prove who allegedly performed action by assumption, and declaration.

The Plaintiff believes his participation in uploading and downloading his own copyrighted data, sharing it with others is nonsensical.  The Defendant disagrees; the Plaintiff

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 9

states their own participation in the rather lengthy initial filling.  The Defendant never said that copyright infringement such be excused because of the Plaintiff's actions.  The Defendant stated that the Plaintiff has not taken appropriate actions to stop websites and up loaders, which they admitted to use to upload and download copyrighted material on.

The Plaintiff states that the (Sha-1) packet tracking issued is an unsubstantiated allegation and again refers to Bittorrent sites as a source of the Defendants information.  However the Nation information Technology Laboratory says the following about the Hash Functions; "Federal agencies should stop using SHA-1 for digital signatures, digital time stamping and other applications that require collision resistance as soon as practical, and must use the SHA-2 family of hash functions for these applications after 2010.", dated 15 March 2006.  By January 2017 Microsoft, Google, Cisco Stopped using SHA-1, phasing it out through updates to remove the security risk of using a system that has proven to be vulnerable and exploitable since 2005.

The Plaintiff states that the Defendant believes that the Plaintiff cannot bring claim because it is not stopping sites from offering the material that they are freely admitting to monitoring.  The Defendant simply states that when the Plaintiff monitors a site for months for a single work, and years for various works, the Plaintiff may become complicit, and as such contribution to the infringement is negligent.

The Plaintiff states that the Defendants statement that the material presented by the Plaintiff is not recognizable as the Plaintiff's copyrighted work is false.  The Plaintiff gives no reason for this.  The Defendant disagrees; the material provided by the Plaintiff is a series of numbers and letters that could be anything.  There is no audio, video, picture, or other distinguishing item to indicate what it is.

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 10

1   The Plaintiff claims the Defendant does not deny that his counterclaim is redundant.  This

2   is simply not true.  The Defendant believes his counterclaims are not redundant.  The Plaintiff

3   states that the counterclaim raises the same factual legal issue and the counterclaim does not seek

4   relief beyond what the Plaintiff seeks.  The Defendant disagrees; the declaration sought by the

5   Defendant provides clear and precise language to distingue that the Defendant did not commit

6   infringement which is not the same as not being found guilty or having the case dismissed.  The

7   facts of this case matter, and they will matter after it is over.  The Counterclaim raises additional

8   factual and legal issues for the Plaintiff.  The Counterclaim raises issues of motive, compensation,

9   false identification, methodology and either willingly filing suit based on what has been

10   identified to the Plaintiff in court on case after case as incomplete, irrelevant, or false

11   information.  A Counter claim does not improperly burden plaintiff as stated by the Plaintiff, it

12   provides the Defense with its legal standing to counter the Plaintiff and seek redress… just as the

13   Plaintiff claims about its claims against the defendant.

14   The Plaintiff improperly sums up the Defendant's counterclaims of abuse of power as

15   citing the sheer number of claims. This is False.  The Defendant clearly cites the practices of the

16   Plaintiff repeatedly show a pattern of jurisdiction shopping, mass filings under a single suit to

17   avoid the cost of litigation, using the courts subpoena powers to provide a large pool of people,

18   and filing statements with the court supposedly in good faith about the physical presence,

19   knowledge, and actions of people based on an account number than places no correlation to

20   actual activity.  The Plaintiff correctly states that they have a right to file a case against an

21   infringer, although the Defendant also correctly states that, the Plaintiff has failed to identify said

22   infringer. The Plaintiff has identified an internet address that belongs to an ISP device with

multiple users.  The device cannot be used to identify a specific user or there device.  The Data cannot prove it was done wirelessly, or on a wired network.  And the court has already ruled the Plaintiff cannot use it as a fishing expedition.

The Defendant maintains that the Plaintiff's action "joining multiple defendants" is maintained as the generalized statements used to file nonspecific information using assumptions, generalizations, to make a case against no-ones that does not survive against individual facts. The Plaintiff has not filed individual cases when the court has severed the cases.  The Plaintiff seeking settlement from a person who has not committed a crime, with full knowledge that their identification does not indicate a person who actually committed a crime, but rather pays for a service... that is not seeking a lawsuit through, that is an abuse of power.  The Court should maintain the Defendants counterclaim as such.

As stated in the Defendant's Answer, Counterclaims, Affirmative Defenses, and Answer to Motion to Dismiss, The Plaintiff refers to the defendants filings with accusatory language and bias by referring to the Defendants pleadings as "wild accusations" and states that's the Defendant is "wholly false about the merits of or motives for Plaintiff's efforts", See Plaintiff's Motion to Dismiss Counterclaim, 6.  Note the Plaintiff does nothing to prove their claim, while the Defendant addresses each claim with factual information as to each subject and reference to its validity where warranted.  The following are a few additional examples of the Plaintiffs claims.

In the Plaintiff's initial complaint, the Plaintiff states" The true identity of the defendant s were unknown to Plaintiff.  Rather each Defendant was known to Plaintiff only by the IP address assigned by an Internet Service Provider and the date and time ... the infringing activity of each

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 12

1   Defendant was observed by the Plaintiff's investigator Maverickeye", See Plaintiff's Motion to

2   Dismiss Counterclaim, 6.  In the Plaintiff's initial complaint, the Plaintiff states" ISP's …

3   generally assign an ISP address to a single party for extended periods of time, often months or

4   even years.  As such it is likely that for all relevant times each Defendant was the sole party

5   responsible for and in control of IP address"

6

7          The Defendant does not believe this statement satisfies Fed. R. Civ. P. 8(a)(2).  "Under

8   Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of

9   the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not

10  required, *Twombly,* 550 U. S., at 555, but the Rule does call for sufficient factual matter,

11  accepted as true, to "state a claim to relief that is plausible on its face," *id.*, at 570. A claim has

12  facial plausibility when the pleaded factual content allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.

14

15         The Defendant has demonstrated that the Plaintiff has not shown sufficient factual matter,

16  accepted as true, to state a claim to relief that is plausible on its face. As stated in the

17  Defendant's prior fillings, ISP's do not assign an IP address to a person, nor to a specific

18  computer.  ISP's assign IP addresses to Cable modems and modem routers, each of which can be

19  connected to multiple devices through the router.  Each router can connect physically and

20  wirelessly to dozens of users at the same time, and other routers.  At which point, all traffic

21  passing through the modem by all desktops, laptops, smart phones, thermostats, smart watches,

22  smart refrigerators, TV's, DVD's, Blu rays, steaming media players, tablets, and other internet

23  connected devices will conduct their business through the SAME IP address.  This is a fact and

24  has been the case as long as modems and routers have been around.  The Plaintiff reply's "false"

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 13

1   in the reply in support of the motion to dismiss, See line 9, page 3.  The Plaintiff says" The data

2   is linked specifically to the IP Address and port assigned to the identified subscriber, which is

3   different from the IP address and port used with "hotspots."  Also, access to "hotspots" is only

4

5   via the account login information of a subscriber, and associated with their account."

6          The Defendant's computer uses a wireless connection to access the internet, so according

7   to the Plaintiff, it could not be the Defendant's computer, because the plaintiff believes the data

8   is linked to a wired connection as Plaintiff states that an IP address and port with hotspots are

9   different.

10

11          The Defendant disagrees with Plaintiff claims for the following reasons.  An IP address is

12   assigned by an ISP to a device, the cable modem or DSL modem.  Computers are connected to

13   the modem by using a router. In this pleading I will refer to routers and wireless routers as

14   "routers" as nearly all routers in residential service today are wireless.  The routers functions as

15   an independent machine to allow multiple users to access the internet using the same IP address,

16   assigned to the modem.  The router establishes a local area network (LAN) for all connected

17   devices.  The router assigns IP, DNS server and default gateway address to all computers

18   connected to the LAN.  These addresses must be part of the same IP address subnet as the

19   router's LAN IP Address.  The LAN uses a default address assigned by the manufacturer; the

20   modem uses one assigned by the ISP.  The following companies use the following default IP

21

22   address ranges: Netgear: 192.168.1.2 thru 192.168.1.254, Linksys: 192.168.1.1 thru

23   192.168.1.254, and Cisco 192.168.2.1 thru 192.168.2.254.

24

25          As a Dynamic host the router assigns a new local address to each device each time it is

26   connected by default.  The local address does not differentiate between the type of connect made,

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 14

as such a wireless device may use a local address that was used by a wired desktop PC the day

before.  Wireless connections are often called Wi-Fi, or hotspots.  Hotspot is a generic term used

to indicate a place to wirelessly connect to the internet.  The modem has a single output that is a

wired connection to the router.  Therefore there is no difference between a wireless connection

and a wired connection to a router for the modem, all traffic passing from a router travels to the

modem through a singular wired connection to the ISP using the exact same IP address.

Routers by design do not carry the IP address of the modem, as they are assigned to the

modem, as an independent machine the router has its own "local address".  The router acts as a

bridge connecting one network device "the modem" to 1 or more other internet connected

devices "computers, cell phones, tablets, ect..".  This bridging action function of the router is

often also referred to as a gateway.  The Modem may be connected to more than one router or

gateway.  This is either done in by parallel connections.  For a parallel connection, the modem is

connected to the first router, and a second router or gateway is connected to the first.  The first

router splits service to the connected devices, including the second router or gateway.  In the case

of Router modem combos, the modem continues to operate independently from the router, and

the router splits the signal between all wired and wireless connected devices, see

www.kb.netgear.com/24089, www.kb.netgear.com/119/How-to-configure-your-NETGEAR-

router-for-cable-internet-connection-with-Smart-Wizard,

www.pcmag.com/article2/0,2817,2375207,00.asp,.

Originally wireless routers contained a singular wireless network or LAN, how ever since

about 2010 all modern routers contain more than one wireless network.  Additional networks are

often referred to as a "quest networks".  The quest network can be used to provide additional

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 15

1   bandwidth or provide a second network for visitors and guest.  The wireless networks may be

2   linked or independent depending on manufacture default settings or customization.  ISP provided

3
4   equipment offered in the last 5 to 10 years includes a guest wireless network for the ISP service

5   providers use.  Access to this network is often not controlled by the customer as the ISP provides

6   it to ALL of its customers as a public hot spot.  Some models will allow the use to disable the

7   public hotspot with input from the ISP, but not all.

8           This is a quote from an ISP: "Your wireless gateway broadcasts an additional Xfinity Wi-

9
10  Fi network signal for use with Xfinity Wi-Fi. This creates an extension of the Xfinity Wi-Fi

11  network right in your home that any Xfinity Internet subscriber can use to sign in and connect.

12  This Xfinity Wi-Fi service is completely separate from your secure home WiFi network.", see

13  www.xfinity.com/support/articles/xfinity-wifi-hotspots.

14          In this case, despite the fact that Xfinity separates the quest network and wired and

15
16  primary wireless connections from interacting, all traffic passing through the router regardless of

17  network type or connected device will pass though the same modem using the singular IP

18  address assigned to the modem. There is no identification of the local device upstream of the

19  router.  In the case of a login, ISP's such as Comcast and business's such as Starbucks have been

20  battling WIFI login hacks for years, home connections are equally susceptible.  Since 2004 most

21  modern wireless networks were equipped with Wi-Fi Protected Access 2 (WPA2).  "WPA2

22  networks are absolutely everywhere. They're also; it turns out, vulnerable to cryptographic attack.

23  A flaw in WPA2's cryptographic protocols could be exploited to read and steal data that would

24  otherwise be protected, according to new research from security researcher Mathy Vanhoef of

25
26  KU Leuven in Belgium. In some situations, the vulnerability even leaves room for an attacker to

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 16

manipulate data on a Wi-Fi network, or inject new data in. … An attacker needs to be physically in range of a particular Wi-Fi network to carry out the assaults, an important limitation. But given the ubiquitous use of WPA2 on tens of millions of Wi-Fi enabled devices around the world, the problem has enormous scope.", see www.wired.com/story/krack-wi-fi-wpa2-vulnerability.

Some commercial, residential, and business routers' wireless connections have account logins, but they are not a requirement.  Common reasons for home computers and internet connections such as "hotspots" to not have logins is because they are used my multiple people. When a network is configured to share internet access for homes and businesses access is established without the use of a login by simply plugging in an Ethernet cable or USB cable. No login is often required by default.  Some equipment manufactures do enable login requirements by default for wireless connections; however it is not a requirement to have logins enabled.

When establishing a network if the router has wireless capability it also becomes a hotspot unless specifically disabled.  The wireless function as well as the wired function can be configured to require a login if so desired.  If no login is required, access is granted by simply plugging in a cable for wired connections, or searching for a wireless network and selecting "connect" for wireless ones.  Routers can also be used to establish private internal networks referred to as an intranet or LAN.  An intranet will allow one computer to access information on another or provide services such as printing to all connected devices on the intranet.

Internet connections can be shared wired or wirelessly through Desktop PC's and Laptops on an intranet by "sharing internet access to other devices".  This allows any computer with internet access to bridge their internet connection with an intranet connection.  Establishing intranet connects has been around for more than 20 years.  Microsoft Windows 98 was one of the

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 17

first widely used readily available operating systems to integrate this function into the system and automate the process to the point of point and click with a mouse.  Wireless printers are operated on an intranet or LAN.  Note: most wireless printer also have Blue-tooth capabilities for cell phone access as well.

Modern smart phones also connect to LAN's, and the internet using a wireless connection to minimize and or reduce the use of cell service.  Wireless access at home will only require a login "IF" you setup one, and once connected the device retains the ability to access it when in range without re-entering a login.

The Plaintiff also states in the initial complaint "Upon information and belief, each defendant copied and distributed Plaintiff's copyrighted motion picture".  The information provided by the Plaintiff is functionally identical to a case (2:11-cv-03995-DRH-GRB) filed by the Plaintiff Voltage Pictures.  The case was ruled on by Judge Gary R. Brown, United states Magistrate Judge on 5/1/2012.  In the Case the Plaintiff, Voltage Pictures filed copyright infringement suits against more than 80 John Doe defendants based on IP addresses.

The Judge dismissed the case for a number of reasons including: Factual Defenses raised by the moving John Doe Defendants, The use of IP Address to Identify the Alleged Infringers, Abusive Litigation Tactics Employed by the Plaintiffs, and Joinder is Inappropriate. The following are excerpts from the Judge's ruling.

"The factual defenses presented are vastly different and highly individualized.  One movant ... was at work at the time... John Doe #2 ... closed the account (internet), which had been compromised by a hacker, before the alleged download".  Consideration of these and

additional facts as detailed in the finding destroyed the credibility of the Plaintiff's identification of the alleged infringers.

"The complaint asserts that the defendants – identified only by IP address – were the individuals who downloaded the subject "work" and participated in the … swarm.  However, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a … film is tenuous… An IP address provides only the location at which one of any number of computer devices may be deployed; much like a telephone number can be used for any number of phones.

As one introductory guide states: If you only connect one computer to the internet, that computer can use the address from your ISP.  Many homes today, though, use of routers to share a single internet connection between multiple computers.  Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms.  If you use a router to share an internet connection, the router gets the IP address issued directly from the ISP.  Then it creates and manages a subnet for all the computers connected to that router.

Thus it is no more likely that the subscriber to an IP address carried out a particular computer function … then to say an individual who pays the telephone bill made a specific call.  Indeed due to the increasing popularity of wireless routers, it is much less likely… 61% of US homes now have wireless access "data from 2012"… As a result, a single IP address usually supports multiple computer devices–which unlike traditional telephones can be operated simultaneously by different individuals… even visitors, neighbors, or passersby could access the Internet using the IP address assigned to a particular subscriber and download", "These

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 19

developments cast doubt on Plaintiff's assertions that the ISP to which each Defendant

subscribes can correlate the Defendant's IP address to the Defendant's true identity."  As of

January 2017, 71% have wireless access in the home.

      "Our federal court system provides litigants with some of the finest tools available to

assist in resolving disputes; the courts should not, however, permit those tools to be used as a

bludgeon.  As one court advised … "while the courts favor settlements, filing one mass action in

order to identify hundreds of doe defendants through pre-service discovery and facilitate mass

settlement, is not what the joinder rules were established for.'"

      "Highly questionable assumptions underlie Plaintiff's contention that these cases satisfy

the requisites for joinder.", "The dates of downloading provided in the complaints – which are

often weeks or months apart – further undermine the allegation that all of the John Does were

part of a single swarm.  Thus, even assuming that the John Does are the actual infringers, the

assertion that defendants were acting in concert, rest upon a thin reed.  See See generally Raw

Films, LTD v. Does 1-32, 2011 WL 6840590, at *2(N.D.Ga. Dec 29, 2011)(stating that the

"differing dates and times of each Defendant's alleged sharing do not allow for an inference that

the Defendants were acting in concert")… because Joinder is permissive, this court retains the

discretion to sever under Rules 20(b), 21, and 42(b)."

      "Due to Plaintiff's litigation strategy, which includes avoiding review on the merits

except at a preliminary, ex parte stage, these determinations were made without any factual

record by judges unaware of the highly individualized, fact specific defenses raised on the

motions to quash, or evidence of strong arm tactics, both of which strongly militate against

allowing joinder in these mass actions.", "As such, I find that principles of fundamental fairness

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 20

and judicial economy dictate that permissive joinder not be allowed in the cases.", The Judge also notes the Plaintiff's litigating tactics in the case as "these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficacy is largely derived from the plaintiff's success in avoiding the filing fees for multiple suits and gaining early access en masse to the identifies of alleged infringers.

Thus the Plaintiff files a single case, and pays one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate.  Postponing a determination on the joinder in these cases "resulting in lost revenue of perhaps millions of dollars (from lost filling fees) and only encourages Plaintiffs in copyright actions to join (or misjoinder) as many doe defendants as possible." K-Beech, Inc v. John Does 1-41, 2012 WL 773683, at *5 (S.D. Tex. 2012).", " In four cases before this Court, Plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory.  Considering all the cases … more than $100,000 in filing fees… If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, Plaintiff's in similar actions may be evading millions of dollars in filling fees annually… It seems Improper that they should profit without paying statutory required fees." As such the motion to Quash was granted.

The Defendant establishes a plausible and factual basis for the comparative negligence defense as such.  Plaintiff incorrectly states that there is no requirement for the Plaintiff to either avoid exercise of its own copyrights, or issue take-down notices to non-ISPs.  The Plaintiff has a fiduciary responsibility to act in the best interest of its clients, the owner of the copy righted work.  As such the moment the work was observed on a website for download, the Plaintiff had the responsibility to file a DMCA takedown notice.  Doing so minimizes the potential number of

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 21

infractions, and maximizes the revenue of the works owners.  Most content is removed within 72 hours achieving that end.  By not issuing the notice the Plaintiff is allowing the work to be infringed with impunity while monitoring as the Plaintiff did in this case from at least the 3rd of July 2017 to the 4th of August 2017, as stated in the Plaintiff's initial claim, Exhibit B.  By ignoring the Plaintiffs fiduciary duty The Plaintiff is negligent as it is complicit to monitor for litigates while taking no action to stop the alleged act.  Choosing to ignore the issuing of a DCMA takedown notice and further improperly stating that the Plaintiff is not required to do so contributes to ulterior motives in seeking mass litigation.  Plaintiff also states that participating in the sharing of its own copyrighted works is exercise of its own copyrights.  In doing so the Plaintiff has willingly and intentionally shared its copyrighted material with a swarm, therefore they have freely given away their copyrighted works.  The Defendants believes this meets the standard for comparative negligence.

   The Plaintiff challenges the "Failure to mitigate damages" defense providing a statement substantially similar the "Comparative negligence" defense challenge.  The Defendant disagrees with the Plaintiff, based on the fiduciary duty of the Plaintiff as stated in the reply to "Comparative negligence" challenge as stated above.

   The Plaintiff challenges the "Illegality" defense claiming the defense does not comply with rule 9(b) or rule 8.  Rule 9(b) states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.".  The Defendant has stated a well plead factual case to address each of these factors.  1) The fraud or mistake, filing cases against a defendant who is incapable of committing the act due to death two months prior.  Also filing

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 22

claims against the account holder for internet access with no reasonable or plausible way of

proving that the account holder is the person who actually committed a crime.  2) Intent - filing

claims against others after actively participating in and allowing the download of copy written

work for over a month unchallenged to increase litigants.  3) Knowledge – the Plaintiff and its

agents have been to court over and over again, with the same and or substantially similar filings.

The Experts were discredited, the data submitted as evidence has been rejected, and the

identification of IP address account holders has been rejected to establish the identity of the

infringer.  4) Malice – the wrong intention of the Plaintiff in not seeking takedown notices,

contacting the account holder of IP addresses and accusing them illegal activity unless they

identify who did indicates knowledge that the IP address account holder may not have committed

the infraction, and a willingness to intimidate and litigate anyway.  The Defendant believes the

Illegality defense meets rule 8, the facts presented in this defense exceed plausibility, as they are

verifiable actions.  There is no question the Plaintiff monitored the "work" for 30+ days, there is

no question that the Plaintiff declared under oath when filling against the defends that on

information and belief the owners of the IP addresses were the infringers, and there is no

question that in (2) cases the defendant was deceased for months prior to the alleged infraction.

It is not a small matter.  The pleading of the Plaintiff is defective.

The Plaintiff challenges the "Unclean hands" defense meets the standards of Rule 9(b)

and Rule 8 as the factual basis defined above.  Prior to litigation the Plaintiff knew the

Identification of account holders does not indicate infringement.  Prior to litigation the Plaintiff

knew an IP address does not indicate a specific computer, but rather a gateway capable of

supporting a large number of devices.  The Plaintiff "Voltage" has been told this in multiple

cases by the judge who settled the cases, yet they filed false information anyway.  Prior to litigation the Plaintiff knew that the data they provided to the court indicates that the defendants could not possible be in a swarm as the information was alleged to be swarmed on a different date and time over 30 days, with no two at the same time.

The Plaintiff challenges the "Misjoinder" defense and improperly says the Defendant alleges things such as "individual responsibility for their own separate infringement".  The Defendant categorically denies the Plaintiff's deceptive assertion.  The Defendant states that the case is improperly joined.  Joining Doe cases to determine the identity of alleged infringed deprives the courts the filing fees, and the details required to allow the courts to judge the factual nature of a case against an individual, rather than a generalized set of assumptions against a group.  To be clear, the Defendant does not know, nor can he speak to the liability of other defendants in this case, to require the defendant to do so would be extraordinarily difficult, if not improper.

The Plaintiff challenges the "No infringement" defense claiming no factual basis.  The Basis is simple; the Defendant did not commit the infraction that alone does not meet the burden.  However the Defendant has provided repeated and consistent facts as detailed as to the show how the Plaintiff's case is not well plead and riff with assumptions, and conclusions not based in fact of logical thinking.  As such it is not logical believe the defendant committed the infringement.

The Plaintiff challenges the "Estoppel" defense. As stated in the response the Estoppel defense is based on the Plaintiffs misrepresentation of material fact.  The Defendant makes an affirmative Defense of Estoppel based of words, actions, omissions, and conduct of the Plaintiff.

It is the Defendants belief that the Plaintiff is aware that the Tracking Activity requires

participation in the Swarm by the Plaintiff and that action is the same illegal action the Plaintiff

alleged the Defendants made.  By pursuing the Estoppel defense the Defendant is pointing out to

the court that due to the Plaintiff's actions, conduct, statements, admissions and failure to act, the

Plaintiff should be denied the use of IP address account holders as a creditable identification

method of who allegedly infringed, the ability to try the defendants in joined cases, and a

substantial display of proof of who actually performed the alleged infringement to include details

specific to the computer used, and presence or not of other computers on said network.  It is the

defendants belief that without such or similar methods, it which prevent injustice owing

inconsistency or fraud.

     The Plaintiff challenges the "Ratification" Defense siting it as new because it was not in

my original answer, and not valid on factual basis.  The Defendant stated clearly in his answer

the rational and factual basis of this defense.  The Defendant thought it obvious that distributing

your own copyrighted material by uploading; downloading it to sites offering to others for free

was obvious to all as active participation in piracy, when you then attack those you shared with.

That would be the same as a person breaking in to their own store, and inviting people in and

using and consuming products… only to prosecute them later for theft.  As the Plaintiff does not

seem to agree, I pray the court decide.

     The Plaintiff challenges the "Barratry" Defense is not valid to dismiss the defense.  The

case is dissimilar and the defendant has the right to make its case for the defense.

     The Plaintiff challenges the "De minimis non curat lex" defense.  The Plaintiff does not

seem to understand the relevance of the defendant's statements.  The Defendant said, "The

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 25

Defense is based on the idea or legal doctrine by which a court refuses to consider trifling matters. The Movie Once upon a time in Venice can be purchased for $7.99, or rented for $4.99. The value of this case to court is minimal or trifling. The defendant beliefs the Affirmative Defense of De Minimis non curat lex is relevatant and should be granted.".  As such the court has more important things to do than settle a case that amounts to 5 to 8 dollars.

The Plaintiff has again improperly put words in the mouth of the Defendant that do not reflect reality.  The Plaintiff states that the defendant admits that he lacks the basis to make virtually all of these allegations.  The Defendant has said no such thing.  The Defendant has provided this addition information in reply to the Plaintiff who at times wants more information and at times wants less.

"When a DMCA take down notice is issued content is removed from a website at the request of the owner of the content or the owner of the copyright of the content. It is a well-established, accepted, internet standard followed by website owners and internet service providers.  Any owner of content has the right to process a takedown notice against a website owner and/or an Online Service Provider (e.g. ISP, hosting company etc.) if the content owner's property is found online without their permission.", see www.dmca.com/FAQ/What-is-a-DMCA-Takedown.

The Defendant has stated in his answer to the Plaintiff's complaint a well pleaded, factual, credible and plausible account as to why there is sufficient cause for the Defendants defense. The Defendants Answer to the complaint as well as additional details provided in this Answer to the motion to Dismiss Counterclaim and Affirmative defenses provide a detailed account that reduce if not eliminate the Credibility of the Plaintiff in this matter.  The Plaintiff finds all other

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 26

1    matters in the motion to dismiss not creditable.  The Defendant request the Plaintiff's motion to

2    Dismiss be denied.

3

4

5

6

7    Dated this 09 of February, 2018.

8

9

                                        Michael Smith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT SMITH'S RESPONSE TO THE PLAINTIFF'S REPLY TO THE DEFENDANT'S MOTION TO
DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES - 27

Michael Smith
521 S. Yantic Ave
Bremerton, WA. 98310

PRIORITY
★ MAIL ★



UNITED STATES
POSTAL SERVICE®

For Domestic Use Only

Label 107R, July 2013

★ TRACKED ★
★ INSURED ★

USPS TRACKING NUMBER

9505 5154 6093 8043 2121 38

Expected Delivery Day: 02/13/2018

United States District Court
Western District of Washington at Seattle
700 Stewart Street, Suite 2310
Seattle, WA 98101

UNITED STATES
POSTAL SERVICE®

1005

98101



U.S. POSTAGE
PAID
BREMERTON, WA
FEB 12, 18
AMOUNT

$6.70

R2305E124380-07



FILED
LODGED
RECEIVED

FEB 14 2018

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
BY                          DEPUTY

MAIL